**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

WILLIAM D. RILEY EL,

          Plaintiff,

        v.

DAVID GOMEZ; QUINTIN TANNER; AND
WEXFORD HEALTH SOURCES, INC.,

          Defendants.

No. 19 C 2002

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

Plaintiff William D. Riley El ("Riley El"), who is currently incarcerated at the Stateville Correctional Center ("Stateville"), filed his Second Amended Complaint against Stateville's former warden, David Gomez, and head of food services, Quintin Tanner, as well as Wexford Health Sources, Inc., under 42 U.S.C. § 1983 for failing to provide him a renal diet to manage his kidney disease. R. 99. Defendant Gomez ("Gomez") has moved to dismiss the claims against him for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). R. 103. For the reasons stated below, the motion is denied.

**Legal Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1

This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

Riley El suffers from kidney disease. R. 99 ¶ 7. His condition requires him to receive hemodialysis three times per week. *Id.* ¶ 12. As a result, Riley El's doctors recommend that he follow a "renal diet" that is high in protein and low in sodium, potassium, and phosphorus. *Id.* ¶¶ 12–16; 21–24. According to Riley El, despite numerous dietary orders from his medical professionals, IDOC has failed to provide him with a renal diet by consistently refusing to give him extra servings of meat and instead giving him peanut butter twice per day, which is high in phosphorus. *Id.* ¶¶ 19, 22–23, 25, 32.

Riley El filed numerous internal grievances from 2017 to 2020, complaining that the Stateville staff were not serving him a renal diet as prescribed by his doctors.

*Id.* ¶¶ 26–37. The Illinois Administrative Code requires inmate grievances to be reviewed by a Grievance Officer, who reports his or her findings to the Chief Administrative Officer, who, in this case, was allegedly Gomez. *Id.* ¶¶ 39–40. According to Riley El, Gomez reviewed at least ten grievances Riley El filed indicating that he was not being served a renal diet, such that Gomez knew or should have known that Riley El was not receiving the renal diet prescribed for him. *Id.* ¶ 40.

In response to his grievances, prison officials, including Gomez, told Riley El that his dietary restrictions were being followed. *Id.* ¶¶ 29–30, 35, 37. The Administrative Review Board, in response to a September 2019 grievance, requested Riley El provide the Board a copy of the Grievance Officer's and Chief Administrative Officer's responses to the grievance. *Id.* ¶ 35. However, Riley El never received a response other than the Chief Administrative Officer's indication in a checkbox that the grievance was not an emergency. *Id.* In response to the numerous grievances, Gomez allegedly concurred with the recommendation of the Grievance Counselor to refer Riley El's complaints to the Dietary Manager. *Id.* ¶ 101. On September 17, 2019, Riley El wrote a letter to the Illinois Department of Corrections ("IDOC") Director, Rob Jeffreys, in which he complained of IDOC's failure to comply with his dietary restrictions. *Id.* ¶ 80. Gomez wrote a letter in reply that insisted that Riley El's dietary restrictions were being observed. *Id.* ¶ 81. Gomez also signed a June 2020 grievance in which Riley El alleged his renal diet was not being followed. *Id.* ¶ 102.

Riley El alleges that, as a result of not receiving a renal diet, his condition has deteriorated, requiring frequent hospitalizations, and he has a high level of

phosphorus in his blood. *Id.* ¶¶ 75–77, 82. He initially brought this lawsuit, alleging that, by failing to provide him with a renal diet, Gomez, Jeffreys, Illinois Governor Pritzker, and various other officials violated his Eighth Amendment right to receive constitutionally adequate medical treatment while incarcerated. R. 1. The Court subsequently dismissed Riley El's individual capacity claims in his First Amended Complaint against Gomez, Jeffreys, and Pritzker because Riley El had not adequately pleaded their personal involvement in his constitutional deprivations—he alleged only that he sent them a single letter and they did nothing. R. 94 at 3–6. The Court also dismissed Riley El's official capacity claims against Jeffreys and Pritzker as duplicative of his official capacity claim against Gomez. *Id.* at 6–8. Riley El now brings his Second Amended Complaint against Gomez (in his official and individual capacities), Quintin Tanner, and Wexford Health Sources, Inc., seeking injunctive and compensatory relief. R. 99 ¶¶ 8–10. Gomez moves once again to dismiss the claims against him for failure to state a claim. R. 103.

## Analysis

In his Second Amended Complaint, Riley El reasserts that Gomez was deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. He alleges that Gomez knew he was not receiving his medically prescribed diet and turned a blind eye to it because Gomez not only received and responded to Riley El's September 2019 letter, but also personally reviewed ten grievances, signed off on one, put a checkmark on another, and concurred with the Grievance Counselor's recommendations. Nonetheless, he asserts that Gomez did

4

nothing but assert that Riley El's dietary restrictions were being followed. Gomez once again moves to dismiss the claims against him, arguing that Riley El did not cure the deficiencies identified by the Court in the First Amended Complaint. Specifically, Gomez again asserts that Riley El has not alleged sufficient facts of his personal involvement, and in any case, qualified immunity protects him from liability.

## I. Gomez's Personal Involvement

To state an Eighth Amendment claim for deprivation of medical treatment, a plaintiff "must demonstrate two elements: 1) an objectively serious medical condition; and 2) an official's deliberate indifference to that condition." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). For an official's actions to reach the level of deliberate indifference, he or she must "know of and disregard an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). That knowledge must be subjective, that is, the official must both know of facts from which he can infer "that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* There is no vicarious liability in § 1983 actions, so defendants are "responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Thus, a supervisory prison official may be personally liable only "if the conduct causing the constitutional deprivation occurs at the official's direction or with his or her knowledge and consent." *Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019) (quoting *Gentry*, 65 F.3d at 561). This means, in practice, that a supervisor must "know about

the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Gentry,* 65 F.3d at 561.

Gomez first argues that Riley El's allegations that Gomez personally reviewed ten of Riley El's grievances are conclusory and not entitled to a presumption of truth under *Iqbal,* 556 U.S. at 680. But these allegations are not the sort of "legal conclusions" or mere recitations of "the elements of a claim that are not entitled to the presumption of truth" as described in *Iqbal. McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 680). It would be one thing for Riley El to simply allege, without supporting factual detail, that Gomez had knowledge of the deprivation of his renal diet or was personally involved in the deprivation. But here, Riley El provides details regarding at least five of the grievances, including the date they were filed, what they contained, and the outcome of each. *See* R. 99 at ¶¶ 26–36 ("Plaintiff filed a grievance . . . dated March 8, 2017, indicating he was not receiving the renal diet he needed and, as a result, his health was continuously declining. Plaintiff requested that IDOC provide a proper diet in accordance with the guidelines provided by the National Kidney Foundation for hemodialysis patients . . . . Plaintiff's March 8, 2017 grievance was denied by the Administrative Review Board because it found the issue with Plaintiff's diet was appropriately addressed by the Stateville administration."). Riley El also infers that Gomez reviewed the grievances because he was required to do so under the Illinois Administrative Code. *Id.* ¶¶ 38– 40. He further alleges that Gomez's signature and check mark on two separate grievances, as well as his concurrence with the Grievance Counselor, demonstrate

6

that he reviewed the grievances. *Id*. ¶¶ 35, 90–91, 101–02. These are not mere conclusory statements of the elements of a cause of action, and the Court should therefore consider them as true. *Tobey*, 890 F.3d at 646.

Gomez next argues that, even if the allegations contained in the Second Amended Complaint are true, they suffer from the same deficiencies that the Court identified in the First Amended Complaint. Specifically, Gomez argues that he is entitled to delegate decisions related to nutrition and medical care to nutrition and medical staff in the prison. It is true that "a warden is generally entitled to relegate to the prison's medical staff the provision of good medical care." *Burks*, 555 F.3d at 595 (holding that a grievance counselor was not deliberately indifferent in refusing to consider a prisoner's untimely grievance); *Arnett*, 658 F.3d at 755. But a non-medical prison official "cannot simply ignore an inmate's plight." *Id*. (citing *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005)). The Seventh Circuit has made clear that when a prison official continuously ignores or denies numerous detailed letters and grievances regarding a constitutional deprivation, such that it rises to the level of "turning a blind eye," he may become personally liable for that deprivation. *Gentry*, 65 F.3d at 561 (reversing dismissal of claims against Prison Superintendent that received and denied numerous complaints of lack of access to scribe materials); *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (reversing the dismissal of a prisoner's deliberate indifference claims against prison officials who received numerous highly detailed complaints about the refusal of medical care); *Hayes v. Snyder*, 546 F.3d 516, 525 (7th Cir. 2008) ("[N]onmedical officials can be chargeable with . . . deliberate

indifference where they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner,") (cleaned up).

Riley El's new allegations against Gomez are like those alleged against the prison officials in *Perez*. 792 F.3d at 781–82. In that case, a prisoner fractured his arm while playing basketball, and prison officials refused to provide him proper medical treatment. *Id.* The prisoner alleged that he wrote numerous grievances and letters, which were reviewed and ignored by higher-level prison officials. *Id.* The Seventh Circuit ultimately held that the allegations that the officials had reviewed the prisoner's "coherent and highly detailed grievances and other correspondences" showed that the officials had requisite "actual knowledge of Perez's objectively serious medical condition and inadequate medical care" and failed to exercise their authority to intervene. *Id.* at 782.

And here, Riley El has pleaded additional facts which, if true, lead to the reasonable inference that Gomez knew about the failure of prison staff to provide Riley El his medically-prescribed renal diet, had the power to do something about it, and, at the very least, turned a blind eye to it. According to the Second Amended Complaint, Gomez received a letter and numerous grievances (over ten) that specifically enumerated Riley El's complaint—that Stateville staff was depriving him of his medically-required renal diet because he was not receiving enough meat and was being served peanut butter, which is detrimental to his condition.[1] He further

---

[1] The Court noted, in its Memorandum Opinion and Order granting in part the first motion to dismiss, that Riley El could adequately plead that Gomez actually knew

alleges facts which imply Gomez's personal involvement in the grievance process—for example, that Gomez was allegedly the "Chief Administrative Officer," who, under Illinois law, is required to review grievances; that Gomez reviewed his complaints because he signed at least one and indicated that another was not an "emergency;" and that Gomez ultimately concurred with the Grievance Counselor's recommendations to refer the issue to the Dietary Manager.[2] At this point, these allegations are enough to state a plausible claim that Gomez is personally liable for deliberate indifference to Riley El's medical needs.

## II.    Qualified Immunity

Gomez next argues that he is immune from suit under the doctrine of qualified immunity. Qualified immunity shields government officials from liability "arising from actions within the scope of their employment unless their conduct violated 'clearly established . . . constitutional rights of which a reasonable person would have known.'" *Bd. v. Farnham*, 394 F.3d 469, 476 (7th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining whether qualified immunity applies, the Court determines whether the allegations, taken as true, show the official's conduct violated Riley El's constitutional rights, and if so, whether that right

---

about the constitutional deprivation by, for example, including details regarding the contents of his letters and grievances. R. 94 at 8 n.2 (quoting *Gentry*, 65 F.3d at 561). The Second Amended Complaint does just that.

[2] Gomez, however, cannot be held liable if the record shows that Gomez acted to remediate the situation by directing the Dietary Manager to alleviate Riley El's complaints, and the Dietary Manager failed to follow Gomez's directives. *Burks*, 555 F.3d at 595 (grievance counselor could not be held liable for medical staff's failure to heed her memorandum directing them to follow medical orders).

was "clearly established." *Farnham*, 394 F.3d at 477. "Government officials are considered 'on notice' that conduct is violative of established law if the state of the law at the time gave them 'fair warning' that their conduct would be unconstitutional." *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Contrary to Gomez's contentions, it is well-settled in this Circuit that "once an official is alerted to an excessive risk to inmate safety or health through a prisoner's correspondence, 'refusal or declination to exercise the authority of his or her office may reflect deliberate disregard.' In other words, prisoner requests for relief that fall on 'deaf ears' may evidence deliberate indifference." *Perez*, 792 F.3d at 782 (citing *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997)); *see also Arnett*, 658 F.3d at 755; *Hayes*, 546 F.3d at 525; *Gentry*, 65 F.3d at 561. Gomez's qualified immunity argument also stems from the assertion that the current Seventh Circuit case law that a prison official can be liable for turning a blind eye to prisoner grievances relating to failures of medical care is wrong. He argues that this line of cases is at odds with the Supreme Court's uncontroversial statement in *Iqbal* that an official "cannot be held liable unless they themselves acted." 556 U.S. at 683. But this statement does not actually contradict Seventh Circuit case law, which also requires a prison official to have personally acted (or refused to act) with deliberate indifference. Indeed, the Supreme Court itself has noted that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Gomez's qualified immunity defense fails.

## Conclusion

For the foregoing reasons, Gomez's motion to dismiss the claims against him is denied.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: April 28, 2023